NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| D.E.R. and S.R., individually and on behalf of D.R. | : :  : | Civ. No. 03-3238(DRD) |
| Plaintiffs, | : : | **O P I N I O N** |
| v. | : : | |
| FREDERICKA SHPETNER, individually and in her official capacity; BRUCE DE YOUNG, individually and in his official capacity; BOARD OF EDUCATION OF THE BOROUGH OF RAMSEY | : : : : : | |
| Defendants. | : : | |

Rebecca K. Spar, Esq.
COLE, SCHOTZ, MEISEL, FORMAN & LEONARD, P.A.
A Professional Corporation
25 Main Street
Hackensack, New Jersey 07601
    Attorney for Plaintiffs

Eric L. Harrison, Esq.
METHFESSEL & WERBEL, ESQS.
3 Ethel Road, Suite 300
P.O. Box 3012
Edison, New Jersey 08818
    Attorney for Defendants.

**Debevoise, Senior District Court Judge**

On April 6, 2005 the court filed an opinion addressing cross-motions for summary

judgment of plaintiffs, D.E.R. and S.R., individually and on behalf of their child D.R.

(collectively "Plaintiffs" or the "Rs") and of defendants, Fredericka Shpetner, Bruce DeYoung and Board of Education of the Borough of Ramsey.  In their complaint Plaintiffs appealed a decision of the New Jersey Office of Administrative Law (the "AOL") and alleged violations of D.R.'s rights under i) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et seq., ii) Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. §794, iii) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132, iv) the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §1983 ("§1983"); v) the United States and New Jersey Constitutions; and vi) New Jersey's Special Education Law, N.J.S.A. 18A:46-1, et seq.  The court granted in part and denied in part the parties' cross-motions.  Plaintiffs now seek an award of attorneys' fees and reimbursement of expenses.

## I. Disposition of Plaintiffs' Claims

Plaintiffs' claims and their disposition in the court's April 6, 2005 opinion follow.  While not explicitly stated in most instances, it should be understood that as to those issues on which Plaintiffs' motion for summary judgment was denied, defendants' cross-motion for summary judgment was granted.

Count One - Pursuant to 20 U.S.C. §1415(i)(3)(B), Plaintiffs seek from Ramsey attorneys' fees and related costs incurred in connection with their due process petition, as well as attorneys' fees and costs incurred in bringing this action for counsel fees.

The court granted Plaintiffs' motion for summary judgment on Count One, awarding $49,210.00 for attorneys' fees, $4,395.96 for filing and other clerical fees, $300.00 for transcription fees and $8,047.50 for experts' fees.

Count Two - Plaintiffs allege that ALJ Springer erred in his May 16, 2003 decision and seek an order reversing certain rulings contained therein.  The ALJ's alleged errors are:

1) showing in his comments on and off the record a predisposition and bias with respect to some issues raised by Plaintiffs in their due process petition;

2) making fact findings not supported by a preponderance of the evidence;

3) not placing the burden on Ramsey to prove that D.R.'s circumstances had changed such that certain supports and services were no longer needed;

4) not holding that D.R. was deprived of a free appropriate education by Defendants' alleged procedural violations, which include not making decision concerning the IEP in a meeting involving the parents and other members of the IEP team, Shpetner making changes in the proposed IEP after the May 24 meeting, deleting provisions that D.R. would not be disciplined for his disabilities, not including any of D.R.'s strengths in the draft IEP, and not giving the Rs proper written notice of changes to D.R.'s IEP;

5) allowing Ramsey to apply its policy and practice of pulling students out of classes on a rotating basis to receive related services rather than considering D.R.'s unique needs;

6) holding that the case involved a dispute over methodological choices concerning the use of the Wilson Reading Program and Positive Behavioral Interventions and Supports ("PBIS"), when Ramsey had agreed to use them;

7) holding that D.R.'s reading instructor need only be a certified teacher rather than a teacher certified in the Wilson Reading Program;

8) not requiring Ramsey to provide a speech language therapist who is experienced and trained in oral motor therapy;

9) holding that the consultant retained to implement D.R.'s BIP did not need training and expertise in PBIS and in curricular and instructional interventions;

10) not requiring the use of an "independent consultant who is mutually agreeable to the parents";

11) holding that the Ramsey teaching staff would determine the scope of meetings to implement D.R.'s IEP, whether to continue the daily behavior sheets and daily communication with the Rs concerning D.R.'s behavior;

12) not requiring that at least one each of D.R.'s regular and special education teachers participate in the meetings to implement D.R.'s BIP;

>13) holding that when D.R.'s counseling services are paid for by Ramsey, D.R. does not have the same privilege and right of privacy that would otherwise apply to a social worker or psychologist-client relationship;
>
>14) allowing Ramsey to send D.R. to an out-of-district private agency for counseling when D.R. is already receiving private counseling, the proposed private agency would require D.R. to submit to additional evaluations as a condition of receiving the counseling and has indicated it may share confidential communications with Ramsey; and
>
>15) allowing Ramsey to send D.R. to an out-of-district private agency for his social skills rather than provide the social skills in the less restrictive environment of Smith School and with non-disabled peers.

The court granted Plaintiffs' motion in part, reversing the ALJ's decision to the extent that it upheld changes made to the 2002-03 IEP after the May 24, 2002 IEP meeting (one of the errors alleged in item (4) listed above) and to the extent that it upheld the selection of Lisa Kenduck to provide oral motor therapy services (the error alleged in item (8) listed above). The court denied Plaintiffs' motion for summary judgment on Count Two in greater part, affirming the ALJ's decision with respect to all other claims and granting defendants' motion for summary judgment on those claims.

Count Three - Plaintiffs allege that Defendants violated their rights under the IDEA, as enforced through Section 1983, by failing to provide D.R. with: (1) a teacher certified in the Wilson Reading Program and a reading and language arts/writing teacher who was trained and experienced in Orton Gillingham principles, as specified in the parties' July 2001 Settlement Agreement and 2001-02 IEP; and (2) a revised IEP that included a plan for peer support, as directed by ALJ Springer's May 2003 decision.

The court denied Plaintiffs' motion for summary judgment against Ramsey, Shpetner and De Young with respect to the Wilson Reading Program and Orton Gillingham issues and granted Plaintiffs' motion for summary judgment against Ramsey and Shpetner that a revised IEP should include a plan for peer support, but denied their motion against De Young on the plan for peer

support issue.

  Count Four - Plaintiffs allege that De Young and Ramsey engaged in disability-based discrimination in violation of Section 504 and the ADA and as enforced through Section 1983, when they suspended D.R. for ten days without educational services.  Among other relief, Plaintiffs seek removal of any reference to the suspension from D.R.'s school records or, in the alternative, reducing any reference to a one-day suspension.

  The court denied Plaintiffs' motion for summary judgment against Ramsey and De Young on Count Four.

  Count Five - Plaintiffs allege that Shpetner violated D.R.'s rights under the IDEA, his Fourteenth Amendment right to privacy and as enforced through Section 1983, and his rights to confidentiality under state law when she gave copies of D.R.'s school records to the Ramsey Police Department.  Plaintiffs request, *inter alia*, (1) a declaratory judgment that when a private citizen reports an alleged crime, a student's school records cannot be disclosed without the consent of the student or if the student is a minor, the consent of the parents, or court order; and (2) that any future requests for disclosure of D.R.'s records be addressed and decided by the principal at whatever school D.R. would be attending.

  The court granted Plaintiffs' motion for summary judgment against Schpetner on Count Five only to the extent that Shpetner failed to maintain a proper log of access to D.R.'s school records and denied the motion with respect to all other elements of the Count Five claims against Shpetner.

  Count Six - Plaintiffs allege that taking D.R. out of his classes in order to receive related services discriminates against him and violates his rights under Section 504 and as enforced through Section 1983.  Plaintiffs seek, *inter alia*, an "[o]rder directing Ramsey to provide speech language and oral motor therapy services after school and on the weekends and at a time when D.R. is available and accessible for instruction[.]"

  The court denied Plaintiffs' motion for summary judgment against Ramsey, Shpetner and De Young on all claims alleged in Count Six.

  Count Seven - Plaintiffs allege that Defendants' policy and practice of pulling out all disabled students, including D.R., from classes on a rotating basis in order to receive related services violates his rights under the IDEA and Section 504 as enforced through Section 1983. The requested relief is the same as the relief sought in Count Six, with the added demand for an

order finding that Defendants' pullout policy and practice violates the IDEA and Section 504's mandate to address the unique needs of each disabled student.

The Court denied Plaintiffs' motion for summary judgment against Ramsey, Shpetner and De Young on all claims alleged in Count Seven.

<u>Count Eight</u> - Plaintiffs allege that the May 16, 2003 decision of ALJ Springer contains information that, if disclosed, would violate D.R.'s privacy rights. Plaintiffs seek an order reversing ALJ Springer's August 7, 2003 decision denying Plaintiffs' motion to seal the May 16, 2003 decision or, in the alternative, redacting personally identifiable information and sensitive information contained in the May 16, 2003 decision.

The Plaintiffs' motion for summary judgment against Ramsey on Count Eight was unopposed and consequently was granted.

It is apparent from a review of the above that Plaintiffs prevailed upon relatively few of the contested issues in this case, resulting in the Court's ruling that "[t]he Rs may make a separate application [for attorneys' fees] on account of the very limited success enjoyed in this case." (Slip opinion at 71).

## II. <u>Decision</u>

Plaintiffs' counsel spent 604 hours in connection with this matter and seeks compensation at the rate of $300 per hour. This produces a lodestar of $181,200. To this must be added $3,600 in fees resulting from 12 hours of work incurred with respect to the fee application. Thus the total lodestar is $184,800. Counsel sought to allocate hours to issues on which Plaintiffs prevailed and eliminate hours devoted to issues on which Plaintiffs did not prevail. After eliminating the latter category of hours the lodestar becomes $116,672 ($113,072 plus $3,600 for preparation of the fee application). This constitutes approximately 63% of the overall lodestar. In addition plaintiffs seek $4,640.29 an account of expenses, $7,097.45 for transcript costs and

$500.00 for expert fees, yielding a grand total of $128, 909.74.

In its discretion, the court may award attorney's fees to a prevailing party in an IDEA action. See 20 U.S.C. §1415(i)(3)(B). A "prevailing party" for attorney's fees purposes is a party that succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit. John T. v. Delaware County Intermediate Unit, 318 F.3d 545, 555 (3d Cir. 2003). A party must be successful in the sense that it has been awarded some relief by a court. Id. at 556 (holding that the holding in Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001), which concerned attorney's fees to a prevailing party under the Fair Housing Amendments Act and the ADA, applies to the fee-shifting provision in the IDEA). "[T]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." Id. at 555 (citation omitted). The Court of Appeals has applied a two-pronged test to determine whether parents are the prevailing party: (1) whether plaintiffs achieved relief and (2) whether there is a causal connection between the litigation and the relief from the defendant. Wheeler v. Towanda Area School Dist., 950 F.2d 128, 131 (3d Cir. 1991). Litigation is causally related to the relief if it changed the legal relations of the parties such that defendants were legally compelled to grant relief. Id. at 132.

Plaintiffs qualify as a prevailing party. They have succeeded in obtaining relief on certain issues in their favor as described above. Accordingly, Plaintiffs are entitled to reasonable attorneys' fees.

Given that the Rs have met the generous "prevailing party" threshold, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensley, 461 U.S. at 433. What is

reasonable is the crux of the dispute concerning the amount of attorneys' fees. Where plaintiffs' claims arise out of a common core of facts and involve related legal theories, "the most critical factor is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983). Where, as here, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. Id. To arrive at a reasonable fee award, a district court should exercise its equitable discretion "either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789-790 (1989) (citing Hensley v. Eckerhart, 461 U.S. at 437 and Blanchard v. Bergeron, 489 U.S. 87, 96 (1989)). "Accordingly, a court must reduce the fee award if 'it concludes the benefits of the litigation were not substantial enough to merit the full amount of the lodestar.'" McDonnell v. United States, 870 F. Supp. 576, 587 (D.N.J. 1994) (citation omitted).

Plaintiffs' counsel has proceeded with an issue by issue analysis in an effort to arrive at the number of hours appropriately allocated to those issues on which Plaintiffs prevailed and for which, they assert, they should recover attorneys fees. This results in a fee which is more than 60% of the total lodestar. Considering the limited degree of success which the Plaintiffs achieved as reflected in Part I of this opinion this greatly overstates the extent to which they should be reimbursed for attorneys' fees.

Some sense of proportions has to be introduced into these proceedings. Ramsey and its educational system is devoting substantial resources to address D.R.'s serious problems. It is true that the Board of Education has failed to meet some of the procedural and substantive

requirements of the IDEA, but the Rs have made demands for resources and accommodations which go far beyond those to which they are entitled under IDEA or other statutory provisions, advancing sophisticated legal theories to support these demands as they pursued them in the administrative proceedings and in this court. In successfully resisting these unjustified demands the Board of Education has had to pay its own attorneys' fees. It would be inappropriate to require defendants to pay in addition any portion of the Plaintiffs' attorneys' fees attributable to issues on which they did not prevail.

Plaintiffs' counsel has established that $300 per hour was her usual billing rate effective September 2, 2004 and that this rate is based on the prevailing market rate for the kind and quality of services provided and is comparable to fees charged by attorneys of similar experience in this geographical area. The court has reviewed counsel's attempt to allocate hours on which plaintiffs prevailed and concludes that this allocation does not reflect the limited degree to which Plaintiffs prevailed and the very substantial degree to which defendants prevailed. In view of the common core of facts and related legal theories that Plaintiffs advanced, a claim-by-claim calculation cannot be accomplished realistically. Considering all the factors the court concludes that 30% of the total lodestar ($55,440) constitutes reasonable compensation with respect to the issues on which Plaintiffs prevailed.

Depositions were taken of Toni Barber, Eileen Thomas, Richard Wiener, John S. Smatla (on two occasions), Bruce De Young, Ellen Walsh, Fredericka Shpetner (on three occasions), Mary Ann Paone and Christine Murphy. Of these depositions those of Walsh, Shpetner and Murphy addressed to some extent issues on which Plaintiffs prevailed. These depositions resulted in expenditures totaling $2,515.50 for which Plaintiffs should be reimbursed.

Defendants do not contest reimbursement for $4,640.90 in expenses and $500 expert fees.

### III. Conclusion

Plaintiffs are entitled to attorneys' fees in the amount of $55,440. They are entitled to reimbursement of expenses and expert fees in the amounts of $4,640.90 for expenses, $2,515.50 for deposition transcripts and $500 for expert fees, totaling $7,656.40. The court will enter an order implementing this opinion.

                                             /s/ Dickinson R. Debevoise
                                             DICKINSON R. DEBEVOISE
Dated: July 11, 2005                                 U.S.S.D.J.